DOROTHY JOHNSON AND PAULA SMITH, Plaintiff-Appellants v. FIRST UNION COR-PORATION AND/OR FIRST UNION MORTGAGE CORPORATION; KAY L. BAILEY; CIGNA PROPERTY & CASUALTY INSURANCE COMPANY AND/OR ESIS, INC.; ROBIN DEFFENBAUGH; INTERNATIONAL REHABILITATION ASSOCIATES, INC. (INTRACORP); AND PAT EDWARDS, R.N., Defendant-Appellees

No. COA97-211

(Filed 3 February 1998)

1. **Workers' Compensation § 57 (NCI4th)— fraud in claims settlement—Act not exclusive remedy**

The exclusive remedy doctrine did not apply to bar plaintiffs' civil action for acts of fraud allegedly committed in the handling of plaintiffs' workers' compensation claims where the Industrial Commission's power to remedy the effects of fraud at the time the fraudulent acts allegedly occurred was limited to setting aside an agreement tainted by fraud pursuant to N.C.G.S. § 97-17; plaintiffs have alleged injuries beyond the mere loss of workers' compensation benefits, including emotional distress, and also seek punitive damages; and the remedy provided by N.C.G.S. § 97-17 thus does not adequately address plaintiffs' alleged injuries.

JOHNSON v. FIRST UNION CORP.

[128 N.C. App. 450 (1998)]

## 2. Intentional Mental Distress § 2 (NCI4th)— refusal to pay insurance claim—sufficiency of complaint

Plaintiff employees' complaint properly alleged intentional infliction of emotional distress for defendant insurers' refusal to pay an insurance claim where plaintiffs' complaint alleged that defendants' "fraudulent misrepresentation and concealment of facts . . . were done with the intent to inflict anxiety and distress upon them."

## 3. Insurance § 1042 (NCI4th)— bad faith refusal to pay insurance benefits—statement of claim

The trial court erred in dismissing plaintiffs' claims against defendant insurers for bad faith refusal to pay insurance benefits to plaintiffs who alleged they became disabled due to a motion disorder while employed by defendant, First Union, where plaintiffs alleged that defendants materially altered a Form 21 agreement and produced an inaccurate video of plaintiffs' job duties to deceive plaintiffs' physicians that plaintiffs' injuries were not work-related.

## 4. Insurance § 11 (NCI4th)— unfair settlement statute—no individual claims

Plaintiffs' claim under the unfair insurance claim settlement statute, N.C.G.S. § 58-63-15(11), was properly dismissed because the statute creates a cause of action only in favor of the Insurance Commissioner.

## 5. Insurance § 11 (NCI4th)— workers' compensation—unfair or deceptive practice—statement of claim

Plaintiffs stated a claim for unfair or deceptive trade practices against defendant workers' compensation insurers where they alleged that defendants altered a Form 21 agreement and misrepresented plaintiffs' work duties to plaintiffs' physicians. N.C.G.S. §§ 58-63-15(11)i, 75-1.1.

## 6. Workers' Compensation § 57 (NCI4th)— fraud in settlement of claims—unfair practice action not barred

Alleged fraudulent conduct by defendant employer in the settlement of plaintiffs' workers' compensation claims did not fall within the scope of the employer-employee relationship governed by the Workers' Compensation Act where the fraudulent actions occurred after plaintiffs were no longer employed by defendant and did not relate to the accidents giving rise to the claims; thus,

plaintiffs were not barred from bringing actions under the unfair or deceptive trade practices statute based upon such alleged fraud. N.C.G.S. § 75-1.1.

**7. Conspiracy § 10 (NCI4th)— civil conspiracy—sufficiency of complaint**

Plaintiffs stated a claim for civil conspiracy against defendant employer, defendant workers' compensation insurers, and their agents and employees where plaintiffs alleged that the employer and insurers, through their agents and employees, entered into a common agreement in furtherance of common objectives to fraudulently deprive plaintiffs of workers' compensation benefits and medical treatment and to defraud the Industrial Commission.

**8. Workers' Compensation § 104 (NCI4th)— civil actions— stay pending workers' compensation determination—doctrine of primary jurisdiction**

Plaintiffs' civil actions arising from the allegedly fraudulent handling of their workers' compensation claims by defendant employer, defendant compensation insurers, and their agents and employees will be stayed under the doctrine of primary jurisdiction pending the Industrial Commission's determination of plaintiffs' underlying workers' compensation claims.

Appeal by plaintiffs from order entered 18 September 1996 by Judge Henry V. Barnette, Jr., in Wake County Superior Court. Heard in the Court of Appeals 9 October 1997.

*Charles R. Hassell, Jr., for plaintiff-appellants.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Robin K. Vinson, for defendant-appellees First Union Corporation, First Union Mortgage Corporation, and Kay L. Bailey.*

*Yates, McLamb & Weyher, L.L.P., by Derek M. Crump and Travis K. Morton, for defendant-appellees CIGNA Property & Casualty Insurance Company, Esis, Inc., Robin Deffenbaugh, International Associates, Inc., and Pat Edwards, R.N.*

*Maupin, Taylor & Ellis, P.A., by Elizabeth D. Scott, for defendant-appellees, International Rehabilitation Associates, Inc. (Intracorp), and Pat Edwards, R.N.*

McGEE, Judge.

Plaintiffs appeal from the granting of defendants' motions to dismiss pursuant to N.C.R. Civ. P. 12(b)(6). Plaintiffs' complaint alleged common law fraud, unfair or deceptive trade practices, intentional infliction of emotional distress, bad faith claims practices and civil conspiracy by defendant First Union Corporation and/or First Union Mortgage Corporation (employer) and defendants Cigna Property and Casualty Company and/or Esis, Inc., and International Rehabilitation Associates, Inc. (Intracorp) (collectively insurers), in connection with the handling of their workers' compensation claims.

In 1992 and 1993 plaintiffs separately filed claims with the North Carolina Industrial Commission (Commission) seeking workers' compensation benefits for injuries they allegedly sustained in the course of their employment with First Union as customer representatives in the Raleigh, North Carolina office. Specifically, plaintiffs allege that they developed a "repetitive motion disorder" affecting their hands, arms, shoulders, and neck. The record shows that the Commission has not yet issued an opinion and award for the claim of either plaintiff.

Viewing the facts in the light most favorable to the plaintiffs, the allegations in plaintiffs' complaint show that in August 1992 Smith signed a Form 21, which obligated the insurer to pay compensation to her "for an unlimited period of 'necessary' weeks." In September 1992, Smith received a copy of a letter by Robin Deffenbaugh (Deffenbaugh), claims adjustor for the insurers, stating that further medical treatment in her case was no longer authorized by insurers because Smith's physician had withdrawn his opinion that her injury was caused by activities performed in the course of her employment. Smith then obtained counsel, who upon investigation, informed her that the Form 21 Agreement she had signed was not contained in the Commission's file. Shortly thereafter, Smith advised the Commission of the insurers' failure to submit the executed Form 21 to the Commission for approval. By letter dated 3 March 1993 Smith was notified by the Commission that it had received a Form 21 which appeared to have been materially altered by defendants. The Commission also informed plaintiff that the possibility of fraud in connection with the alteration of the Form 21 could warrant the setting aside or the voiding of the Form 21. Plaintiff was further notified that defendants had failed to file other reports with the Commission required by law.

Smith alleged in her complaint that:

defendants, through their agent and employee Deffenbaugh, with the intent to deceive plaintiff Smith, her attorney and the Industrial Commission, altered material terms of the Form 21 she had signed, by whiting out and changing its agreement to pay compensation for an unlimited period of "necessary" weeks, to "7 6/7" weeks, a limited period which conformed to the date her physician's diagnosis was canceled, and returned the altered Form 21 to the Industrial Commission for approval and filing.

Smith further alleged that by providing her physician with a videotape inaccurately depicting her work-related activities at First Union, the insurers intentionally misrepresented her work-related activities in order to cause her physician to withdraw his opinion that she was disabled. The videotape was produced by the insurers, through their agents and employees, Deffenbaugh and Pat Edwards, a rehabilitation nurse acting as the agent of all defendants in the provision of medical case management services to both plaintiffs in connection with their workers' compensation claims. According to plaintiffs, "[t]he video did not accurately illustrate the actual repetitive, high-speed activities plaintiffs and other CSRs had performed on a daily basis." Plaintiffs alleged that "defendants, through use of the inaccurate video . . . willfully deceived" plaintiffs and their physician, and as a result caused the physician to "withdraw his diagnosis that [plaintiffs'] injuries were work-related because [plaintiffs'] work activity as depicted in the video could not have caused a repetitive motion disorder." Smith also alleged that Edwards had "conspired with the employer and carrier in a plan to discredit her claim."

Johnson was first employed by First Union in the same office as Smith from 1986 to 1989, and later for eighteen months from June 1991 until January 1993. In January 1992 Johnson developed a repetitive motion disorder and later filed a claim with the Commission for disability arising from this disorder. In March 1993, by letter from the Commission, she learned that her claim had been rejected on the basis of the same inaccurate video previously sent to Smith's physician. In November 1993, insurers informed Johnson that based on the inaccurate videotape, her physician had withdrawn his diagnosis that her injury was work-related. Because of this, defendants would not voluntarily accept her claim for compensation and continued medical treatment. Johnson then joined Smith in filing the 25 March 1996 complaint on the basis that defendants acted with the intent to

deceive her physician through use of a videotape which inaccurately portrayed the work-related duties of both she and Smith.

## I. Exclusive remedy doctrine

[1] The first issue before this Court is whether the Workers' Compensation Act (Act) provides the exclusive remedy for acts of fraud committed in the handling of workers' compensation claims. We first examine the scope of the Commission's authority under the applicable statutes pertaining to fraud under the Act. *Charlotte-Mecklenburg Hospital Auth. v. N.C. Industrial Comm.*, 336 N.C. 200, 214, 443 S.E.2d 716, 725 (1994) (quoting *In re Community Association*, 300 N.C. 267, 280, 266 S.E.2d 645, 654 (1980) ("[T]he responsibility for determining the limits of statutory grants of authority to an administrative agency is a judicial function for the courts to perform.").

We note that the alleged fraudulent acts occurred prior to the General Assembly's enactment of the Workers' Compensation Reform Act of 1994, N.C. Gen. Stat. § 97-88.2 (1994); thus, this statute does not govern the case currently before this Court. N.C. Gen. Stat. § 120-20 (Cum. Supp. 1997) (acts of the General Assembly effective only after passage unless otherwise expressly directed). This statute required the Commission to "refer all cases of suspected fraud and all violations related to workers' compensation claims, by or against insurers or self-funded employers, to the Department of Insurance." N.C.G.S. § 97-88.2. The applicable statute, as amended in 1995, now confers this authority upon the Commission by requiring it to:

(1) Perform investigations regarding all cases of suspected fraud and all violations related to workers' compensation claims, by or against insurers or self-funded employers, and refer possible criminal violations to the appropriate prosecutorial authorities;

(2) Conduct administrative violation proceedings; and

(3) Assess and collect civil penalties and restitution.

N.C. Gen. Stat. § 97-88.2 (Cum. Supp. 1997).

This case is governed by law as it existed prior to the passage of N.C. Gen. Stat. § 97-88.2. There was no comparable statute existing at the time the fraudulent acts allegedly occurred to empower the Industrial Commission to penalize insurers and employers for attempting to fraudulently deprive injured employees of their benefits. The Commission's power to remedy the effects of fraud involving

"settlements made by and between the employee and the *employer,*" such as a Form 21 Agreement, was limited to setting aside the agreement tainted by fraud pursuant to N.C. Gen. Stat. § 97-17 (1991) (emphasis added). This statute provides that if there has been error due to fraud, misrepresentation, undue influence or mutual mistake, "the Industrial Commission may set aside such agreement." N.C.G.S. § 97-17.

"[W]hen an *effective* administrative remedy exists, that remedy is exclusive." *See Charlotte-Mecklenburg Hospital Authority,* 336 N.C. at 209, 443 S.E.2d at 722 (citations omitted). However, when the relief sought differs from the statutory remedy provided, the administrative remedy will not bar a claimant from pursuing an adequate remedy in civil court. *Id.* (holding that hospital's action for injunctive relief from Workers' Compensation statute not barred by exclusive remedy doctrine because relief sought differed from relief provided by Workers' Compensation Act).

We hold that the remedy provided by N.C.G.S. § 97-17 is not effective as it does not adequately address the plaintiffs' injuries. First, plaintiffs have alleged injuries beyond the mere loss of workers' compensation benefits, including emotional distress arising from defendants' fraudulent actions, *see Waddle v. Sparks,* 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) (stating the three elements of an independent claim for emotional distress in negligent hiring and retention claims). They also seek punitive damages not provided for by N.C.G.S. § 97-17 which only empowers the Commission to set aside the tainted agreement. It is well-settled that the "punishment of . . . intentional wrongdoing," including acts of fraud, is "well within North Carolina's policy underlying its concept of punitive damages." *Newton v. Insurance Co.,* 291 N.C. 105, 113, 229 S.E.2d 297, 302 (1976) (discussing availability of punitive damages in suit for bad faith refusal of insurer to pay claim). This Court has ruled it is error to dismiss a claim for punitive damages arising from a claim for bad faith refusal of insurer to pay benefits when the claim alleges that an insurer acted in "wilful, wanton and in conscious disregard of [its] duty to pay plaintiff's insurance claim." *Von Hagel v. Blue Cross and Blue Shield,* 91 N.C. App. 58, 62-63, 370 S.E.2d 695, 699 (1988).

For these reasons, we hold that N.C. General Statute § 97-17 is not an effective remedy for plaintiffs' additional injuries beyond the loss of workers' compensation benefits; thus, the exclusive remedy doctrine does not apply to bar plaintiffs' civil action. *See Charlotte-*

*Mecklenburg Hosp. Auth.*, 336 N.C. at 209, 443 S.E.2d at 722 (discussing exclusive remedy doctrine).

## II. Sufficiency of allegations

Next we examine whether, in viewing the plaintiffs' allegations as true, the plaintiffs have stated claims for which relief can be granted. *Miller v. Nationwide Mutual Ins. Co.*, 112 N.C. App. 295, 299-300, 435 S.E.2d 537, 541 (1993), *disc. review denied*, 335 N.C. 770, 442 S.E.2d 519 (1994) (discussing appellate review of 12(b)(6) motion).

### a. Intentional infliction of emotional distress claim

[2] In order to survive a 12(b)(6) motion against an insurer for intentional infliction of emotional distress in refusing to pay an insurance claim, the complaint must allege that defendant insurer demonstrated "calculated intentional conduct causing emotional distress directed toward" the plaintiff. *Von Hagel*, 91 N.C. App. at 63, 370 S.E.2d at 699-700. Plaintiffs have met this requirement as they alleged that the defendants' "fraudulent misrepresentations and concealment of facts . . . were done with the intent to inflict anxiety and distress" upon them. Thus this claim was improperly dismissed.

### b. Bad faith refusal of insurer to pay benefits

[3] To state a claim for bad faith refusal to pay insurance benefits, plaintiff must allege that the insurer has acted in bad faith by refusing to settle or negotiate with the plaintiff and that the insurers' actions have been a misuse of power and authority tantamount to outrageous conduct reflecting a reckless and wanton disregard of the plaintiff's rights under the insurance policy. *Dailey v. Integon Ins. Corp.*, 57 N.C. App. 346, 349, 291 S.E.2d 331, 332-33 (1982).

After reviewing plaintiffs' complaint, we hold that the allegations are sufficient to satisfy these requirements. The trial court erred in dismissing these claims for relief as the complaint contains allegations that the insurers materially altered the Form 21 agreement and produced an inaccurate video of plaintiffs' job duties to deceive plaintiffs' physicians that plaintiffs' injuries were not work-related. *Von Hagel*, 91 N.C. App. at 63, 370 S.E.2d at 699.

### c. Unfair or Deceptive Trade Practices

[4] Plaintiffs also alleged that the "actions and conduct of defendants through their respective agents and employees . . . constitute unfair or deceptive trade practices as defined by N.C. Gen. Stat. § 58-63-15

*et seq.* and 75-1.1 *et seq.*," and as a result they "have sustained damages as a proximate result" of these practices. N.C. Gen. Stat. § 58-63-15(11) (1994) specifically states that it does not "of itself create any cause of action in favor of any person other than the [Insurance] Commissioner." Accordingly, the claim for relief brought by the plaintiffs under this statute was properly dismissed. However, N.C. Gen. Stat. § 75-1.1 (1994) creates a "remedy 'in the nature of a private action' for the conduct described by and in [N.C. Gen. Stat.] § 58-63-15(11)." *Murray v. Nationwide Mutual Ins. Co.*, 123 N.C. App. 1, 10, 472 S.E.2d 358, 363 (1996), *disc. review denied*, 345 N.C. 344, 483 S.E.2d 172 (1997), *and disc. review denied*, 345 N.C. 344, 483 S.E.2d 173 (1997).

[5] N.C. General Statute § 58-63-15(11)i. (1994) states that to attempt "to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured" is an unfair claim settlement practice when "committ[ed] or perform[ed] with such frequency as to indicate a general business practice." Case law has further required that for a plaintiff to prevail on a claim for unfair or deceptive trade practices, plaintiff must demonstrate the existence of three factors: "(1) an unfair or deceptive act or practice, or unfair method of competition, (2) in or affecting commerce, and (3) which proximately caused actual injury to the plaintiff or his business." *Murray*, 123 N.C. App. at 9, 472 S.E.2d at 362 (citations omitted). When "an insurance company engages in conduct manifesting an inequitable assertion of power or position," including conduct which can be characterized as "unethical," that "conduct constitutes an unfair trade practice." *Id.* In this case the alleged alteration of the Form 21 agreement and the misrepresentation of plaintiffs' work duties to plaintiffs' physicians by the insurer are actions which meet this definition. Thus the plaintiffs' claim for relief on these grounds was improperly dismissed against the insurers.

[6] We next address whether a cause of action exists under N.C. Gen. Stat. § 75-1.1 *et seq.* against defendant employer. This Court has previously held that "employer-employee relationships do not fall within the intended scope of [N.C. Gen. Stat. § 75-1.1]." *Buie v. Daniel International*, 56 N.C. App. 445, 448, 289 S.E.2d 118, 119-20, *disc. review denied*, 305 N.C. 759, 292 S.E.2d 574 (1982) (Unfair or Deceptive Trade Practices Act does not create action against employer for harassment and dismissal of employee following work-related injury to prevent employee from claiming workers' compensation benefits). The policy behind this statutory construction is that

"[e]mployment practices fall within the purview of other statutes adopted for that express purpose." *Buie*, 56 N.C. App. at 448, 289 S.E.2d at 120. However, in this case, the fraudulent actions allegedly committed involved conduct occurring after plaintiffs were no longer employed by the employer, and related to the settlement of the claims, not the accidents giving rise to the claims. Thus, this conduct does not fall within the scope of the employer-employee relationship governed by the Workers' Compensation Act. *See* N.C. Gen. Stat. § 97-2 (2) (1991) (defining "employee"); *see also* N.C. Gen. Stat. § 97-2 (6) (1991) (defining compensable "injury" as one "by accident arising out of and in the course of the employment"). As discussed above, there is no other effective available remedy to penalize employers' fraudulent conduct in regard to workers' compensation claims under the Workers' Compensation Act; we thus hold that this case is not controlled by *Buie*, 56 N.C. App. at 448, 289 S.E.2d at 120, and a cause of action against the employer exists under N.C. Gen. Stat. § 75-1.1.

We note, however, that this Court cannot ascertain from the complaint alone which actions were committed by the employer as plaintiffs' complaint consistently refers to actions of the "defendants" without clarification as to whether "defendants" include the employer. However, because this case was dismissed on a motion upon the pleadings, we hold that the allegations against First Union were sufficient to survive the 12(b)(6) motion, and thus the trial court improperly dismissed the claims against the employer.

### d. Civil conspiracy

[7] A claim for damages resulting from a conspiracy to defraud exists where there is an agreement between two or more persons to defraud a party, and as a result of acts done in furtherance of, and pursuant to the agreement, that party is damaged. *Fox v. Wilson*, 85 N.C. App. 292, 301, 354 S.E.2d 737, 743 (1987) (citations omitted). "In such a case, all of the conspirators are liable, jointly and severally, for the act of any one of them done in furtherance of the agreement." *Id.* A "conspiracy is an offense independent of the unlawful act which is its purpose." *State v. Saunders*, 126 N.C. 524, 526, 485 S.E.2d 853, 854-55 (1997) (*quoting State v. Essick*, 67 N.C. App. 697, 700, 314 S.E.2d 268, 271 (1984) ("conspiracy is the crime and not its execution"). Therefore, parties may be liable for conspiring to commit a statutory violation which they could not, because of their status, otherwise violate if acting alone. *See Saunders*, 126 N.C. at 526-27, 485 S.E.2d at 855 (defendant may be convicted of conspiracy to commit statutory

crime of larceny by an employee even though defendant, himself, is not an employee).

In this case, the plaintiffs have alleged that the

actions and conduct of defendants through their respective agents and employees . . . included overt acts committed by defendants Edwards, Deffenbaugh and other agents and employees of defendants, pursuant to a common agreement between them in furtherance of common objectives . . . to fraudulently and wrongfully deprive plaintiffs of workers' compensation benefits, medical treatment . . . and to intentionally defraud the [Commission] . . . constitutes a civil conspiracy among defendants.

We hold that plaintiffs have alleged a prima facie case against *all defendants*, and thus dismissal of the conspiracy claim was improper.

### III. Doctrine of primary jurisdiction

[8] Finally we determine the appropriate procedure to dispose of cases involving underlying workers' compensation claims not yet resolved by the Industrial Commission. In *N.C. Chiropractic Assoc. v. Aetna Casualty & Surety Co.*, 89 N.C. App. 1, 9, 365 S.E.2d 312, 316-17 (1988), a case similar to the one before us, this Court applied the doctrine of primary jurisdiction. Under this doctrine, when it appears that "[s]ome aspects of plaintiffs' claims are clearly within the Industrial Commission's jurisdiction," as are the plaintiffs' claims for loss of workers' compensation benefits, "and resolution of these aspects could possibly also determine the resolution of plaintiffs' claims under the common [and statutory] law," the trial court should consider staying the claims before it until the Commission resolves the related claims. *Id.* at 9, 365 S.E.2d at 316-17. Prior to the determination of their workers' compensation claims before the Commission, the plaintiffs in *N.C. Chiropractic Association* filed a complaint in state court alleging unfair or deceptive trade practices and malicious interference with contractual rights involving workers' compensation claims. *Id.* Because of the common factual issues between the plaintiffs' claims and the underlying workers' compensation claims, the trial court refrained from exercising its jurisdiction to resolve the civil claims until after the Commission had resolved the workers' compensation claims. *Id.* (citations omitted).

Similarly, in the case before us, common factual issues exist between the civil claims and the claims for workers' compensation

pending before the Commission which are more appropriately resolved by the Commission. First, with respect to the allegations that the Form 21 was fraudulently altered, the rules promulgated by the Commission govern, and it is the Commission's duty to determine whether such rules and procedures were violated. N.C. Gen. Stat. § 97-86 (Cum. Supp. 1997). For this reason, the Commission is also the appropriate tribunal to make the factual determinations as to whether the video accurately portrayed plaintiffs' work environment. *Id.* Until the Commission determines whether these actions by the defendants comply with its rules and procedures, it would be difficult for the trial court to determine whether such conduct is "extreme or outrageous," or determine if the claims were handled with bad faith or fraudulent intent. Thus, we stay these claims pending the issuance of the opinion and award for both plaintiffs.

In summary, we affirm the trial court's dismissal of the plaintiffs' claim for relief under N.C. Gen. Stat. § 58-63-15(11), and reverse the order granting the 12(b)(6) dismissal on all plaintiffs' other claims against defendant insurers and defendant employer and remand this case to the trial court with instructions to stay these claims until the Industrial Commission has ruled on the plaintiffs' underlying workers' compensation claims.

Affirmed in part, reversed in part, and remanded.

Chief Judge ARNOLD and MARTIN, John C., concur.