Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission modifies and adopts the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. Medical records from Dr. Dye marked as stipulated exhibit 1 were received into evidence.
3. Medical records from the Greensboro Orthopedic and Sports Medicine Center were marked as stipulated exhibit 2 and received into evidence.
4. Medical records of Family Practice of Summerfield marked as stipulated exhibit 3 were received into evidence.
5. The 25 May 1995 Clincher Agreement marked as stipulated exhibit 4 was received into evidence.
6. The 8 June 1995 Order Approving a Compromise Settlement Agreement was marked as stipulated exhibit 5 and received into evidence.
7. A Release and Severance Agreement marked as stipulated exhibit 6 was received into evidence.
8. All parties are properly before the North Carolina Industrial Commission and the North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter.
9. The parties are subject to and bound by the North Carolina Workers Compensation Act.
10. International Multifoods d/b/a VSA, Inc., of the Carolinas was a qualified self-insured under the terms and provisions of the North Carolina Workers Compensation Act, and Crawford and Company administered its claim at the time alleged.
11. Plaintiff was injured in the course and scope of employment on 3 January 1994.
12. Plaintiff was treated by and had surgery performed by Dr. Dye on 3 February 1994, resulting in a disability rating of 10% permanent partial disability.
13. Plaintiff was terminated by defendant on 10 March 1995.
14. The parties entered into a clincher agreement arising out of plaintiffs 3 January 1994 back injury, which was approved by the Industrial Commission by Order filed on 8 June 1995. Plaintiff was represented by Robert A. Lauver and defendant was represented by Clay Custer of Womble, Carlyle, Sandridge and Rice.
15. All parties have been correctly designated and there is no question as to misjoinder or non joinder of parties.
 *********** ADDITIONAL EXHIBITS
1. A 15 September 1994 letter from Nancy Camia to Dr. Dye was marked as employers exhibit 1 and received into evidence.
2. A 16 September 1994 Initial Medical Evaluation prepared by Nancy Camia was marked as employers exhibit 2 and received into evidence.
3. A 9 November 1994 status report prepared by Nancy Camia was marked as employers exhibit 3 and received into evidence.
4. An 8 December 1994 closure report prepared by Nancy Camia was marked as employers exhibit 4 and received into evidence.
5. A 6 April 1995 initial evaluation prepared by Amanda Andrews was marked as employers exhibit 5 and received into evidence.
6. A 13 April 1995 Labor Market Survey report prepared by Amanda Andrews was marked as employers exhibit 6 and received into evidence.
7. A 13 July 1995 letter to Devendra Mishra, president of VSA, first notifying VSA of plaintiffs fraud was marked as employers exhibit 7 and received into evidence.
8. Collins Trucking Company personnel file on plaintiff was marked as employers exhibit 8 and received into evidence.
9. A title and related documents related to plaintiffs 21 June 1995 purchase of a Kenworth tractor were marked as employers exhibit 9 and received into evidence.
10. Plaintiffs drivers daily log while driving long distance for Collins Trucking Company from 26 June 1995 through 10 February 1996 was marked as employers exhibit 10 and received into evidence.
11. A 14 September 1994 letter from Robert Lauver to Tim Martin was marked as employers exhibit 11 and received into evidence.
12. A 5 January 1995 letter from Robert Lauver to Clay Custer was marked as employers exhibit 12 and received into evidence.
13. A 13 March 1995 fax from Robert Lauver to Clay Custer was marked as employers exhibit 13 and received into evidence.
14. A 10 March 1995 termination letter was marked as employees exhibit 1 and received into evidence.
 ***********
Based upon all of the competent evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 46 years old and had been employed by defendant for more than five years as a truck driver.
2. On 3 January 1994, plaintiff was unloading his truck when the lift got stuck. Plaintiff grabbed the lift and pushed it over his head to try to unjam it and had immediate back pain in his lower back. As a result of this work related incident, plaintiff sustained a herniated disc at the L5-S1 level. As a result of the 3 January 1994 work related incident, Dr. David G. Dye performed a lumbar laminectomy on plaintiff on 3 February 1994.
3. As a result of the 3 January 1994 work related incident, plaintiff was unable to earn any wages for the time period beginning 14 January 1994 to 9 May 1994. While defendant paid money to plaintiff during this time period, defendant did so without entering into a Form 21 agreement approved by the Commission.
4. On or about 9 May 1994, Dr. Dye released plaintiff to return to work performing light duty clerical work. Plaintiff was restricted from doing any driving or lifting at that time.
5. On 2 June 1994, Dr. Dye agreed to release plaintiff to return to work as a truck driver. While plaintiff had demonstrated that he had the ability to occasionally lift 50 pounds, Dr. Dye restricted plaintiff from being able to lift more than 25 pounds.
6. On 3 June 1994, plaintiff returned to work for defendant earning an average weekly wage less than the average weekly wage he was earning at the time that he sustained a compensable injury by accident. Plaintiff earned a lesser wage upon his return to work for the time period beginning 3 June 1994 until the date of his termination by defendant on 10 March 1995. Defendant did not pay temporary partial disability compensation to plaintiff during this time period.
7. On 17 June 1994, Dr. Dye reported to Tim Martin, plaintiffs supervisor, that plaintiff could return to work driving a truck as long as someone else was available to do the unloading. Mr. Martin reported to Dr. Dye that he did not have anyone extra that could ride with plaintiff to do the unloading.
8. On 30 June 1994, Dr. Dye restricted plaintiff from driving more than two hours without stopping and taking a break.
9. On 22 August 1994, plaintiff represented to Dr. Dye that he was experiencing gradually increasing pain in his lower back and was having trouble sleeping. Based upon this representation, Dr. Dye formed the opinion that plaintiff would not be able to continue long distance truck driving. Dr. Dye recommended that plaintiff be retrained to perform a different job that did not require driving. Dr. Dye allowed plaintiff to continue to drive under the 30 June 1994 restrictions until plaintiff could be retrained for another position.
10. Medical records from Guilford Orthopedic and Sports Medicine Center dated 8 September 1994 reveal that plaintiff reported that he was still having a significant amount of pain even though he was driving within the restrictions set forth by Dr. Dye on 30 June 1994.
11. On 16 September 1994, plaintiff represented to Nancy Camia, the rehabilitation nurse managing his healthcare, that he did not believe he could drive anymore even with accommodations and assistance. During this same time period, plaintiff also represented to Mr. Martin that he was unable to engage in any long distance truck driving because of back pain.
12. On 19 September 1994, Dr. Dye concluded that plaintiff had reached maximum medical improvement. Dr. Dye rated plaintiff as having sustained a 10% permanent partial disability to his back. Based upon plaintiffs representations about his level of pain while driving a long distance truck, Dr. Dye set forth the following permanent work restrictions: no lifting greater than 25 pounds, no working more than 40 hours a week, and no long distance truck driving.
13. On or about 19 September 1994, defendant did not have a job for plaintiff that was within plaintiffs 25 pound lifting restriction. Although plaintiff could have ridden with another driver in a double team operation, such a position was only available only as light duty work for injured workers and was not available with this employer in the competitive marketplace.
14. From 24 September 1994 through 10 March 1995, plaintiff primarily performed clerical work at defendants corporate office in Greensboro, North Carolina. However, during January or February 1995, plaintiff drove a truck on a three hour trip from Greensboro, North Carolina, to Greenville, South Carolina, in violation of the restriction of no long distance truck driving that Dr. Dye imposed on 24 September 1994. Defendant made this request because some freight had been left off an earlier truck that had traveled to Greenville. After the trip, plaintiff represented to Mr. Martin that his back hurt so much that he did not think he could ever drive a truck under those circumstances again. No evidence was presented as to whether plaintiff had to unload any freight on this particular trip.
15. On 27 November 1995, plaintiff renewed his commercial drivers license with the State of North Carolina.
16. Plaintiff testified that, when he heard "through the grapevine that he was going to be terminated from his employment, he began exploring his options. When he discovered that his restrictions would make it difficult if not impossible to obtain employment with another trucking company, plaintiff decided to purchase his own truck. Plaintiff testified that this decision was made at approximately the time he was terminated by defendant.
17. On 10 March 1995, defendant terminated plaintiffs employment because defendant could not accommodate the lifting restrictions imposed by Dr. Dye. Defendant did not reinstate disability payments to plaintiff at that time.
18. On 13 March 1995, plaintiff was interviewed by a vocational consultant, Amanda Andrews. Ms. Andrews reviewed plaintiffs medical records and determined that plaintiffs permanent restrictions were as follows: 40 hours per week, no lifting greater than 25 pounds, and no driving more than two hours at a time. Apparently she did not realize that Dr. Dye had further modified plaintiffs restriction to not include no long distance truck driving. Plaintiff reported to Ms. Andrews that he had difficulty standing more than 30 minutes at a time. Plaintiff specifically denied the existence of any other physical limitations that would affect his vocational options. There is no evidence to support a finding that plaintiff specifically represented to Ms. Andrews that he could not do any long distance truck driving at this meeting. Neither plaintiff nor Amanda Andrews could remember what was specifically stated during their thirty minute meeting.
19. Nevertheless, Ms. Andrews did not look for long distance truck driving jobs within plaintiffs restrictions. She conducted a labor market survey to determine what other jobs were available to plaintiff in the competitive marketplace. Counsel for both parties relied on the labor market survey prepared by Ms. Andrews in anticipating plaintiffs post injury earning capacity and resulting wage loss.
20. Between 10 March 1995 and 21 June 1995, plaintiff continued to attempt to locate employment as a long distance truck driver. He did not tell his prospective employers that he was unable to drive long distances or work more than forty hours per week.
21. Between 10 March 1995 and 25 May 1995, plaintiffs counsel and defendants counsel entered into negotiations to settle plaintiffs claim. Plaintiff chose to pursue settlement negotiations in lieu of seeking relief from the Industrial Commission by obtaining an order requiring defendant to reinstate benefits. During this two month period, plaintiffs counsel continuously represented to defense counsel, on behalf of plaintiff, that plaintiff was unable to return to work as a long distance truck driver. Plaintiffs counsel was unaware that plaintiff had decided to make plans to purchase his own long distance truck with settlement proceeds. Plaintiff knew or should have known that his attorney was representing to defense counsel that plaintiff could not return to work as a truck driver, which was not true. Plaintiff knew that he could work as a long distance driver despite Dr. Dyes restriction, but he continued to allow his attorney to make representations to the contrary.
22. On 25 May 1995, the parties entered into a clincher agreement whereby defendant agreed to pay plaintiff $46,000 in final settlement of his claim.
23. At the time that plaintiff entered into the settlement agreement, plaintiff had already decided that he would use the proceeds from the settlement to purchase his own truck to haul freight.
24. On 21 June 1995, plaintiff purchased a truck for $54,500.00 from Collins Trucking Company. Plaintiff was able to make this purchase as a result of the $46,000.00 he received from the settlement with defendant. Plaintiff also entered into a lease agreement with Collins Trucking Company whereby he agreed to transport loads for 83 cents per mile.
25. Sometime after 21 June 1995, safety manager for defendant, Bud French, received an anonymous letter that alleged the following: "Mr. Phillips took his cash settlement, bought his own rig and is now running to El Paso, Texas . . . must take a long time if you have to stop every two hours! Based upon this letter, Mr. French hired a private investigator who eventually determined that plaintiff was driving a long distance truck. The contents of the letter were properly admitted to show why defendant hired a private investigator.
26. Plaintiff did not do any of the loading or unloading of the freight that he transported in his truck. However, by his own admission, plaintiff did operate his truck more than 40 hours a week.
27. From 24 September 1994 to at least 21 June 1995, plaintiff did not receive any medical treatment for his lower back.
28. But for the misrepresentation by plaintiffs counsel, on plaintiffs behalf, that plaintiff was unable to return to work as a long distance truck driver, defendant would not have entered into the settlement agreement for the amount agreed upon. Plaintiffs misrepresentation that he could no longer work as a long distance truck driver inflated the settlement amount because the agreement included a substantial sum for plaintiffs alleged loss of future earning capacity and resulting wage loss.
29. Plaintiffs defense of this claim was not based upon stubborn, unfounded litigiousness.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
CONCLUSIONS OF LAW
1. The 25 May 1995 settlement agreement approved by the Commission on 5 June 1995 should be set aside based on plaintiffs misrepresentation. G.S. 97-17.
2. G.S. 97-88.2 as currently written was not in effect as of 5 June 1995, and the Commission did not have authority to order restitution in this case. See Johnson v. First Union Corp., 128 N.C. App. 450,496 S.E.2d 1 (1998).
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. The 25 May 1995 clincher agreement approved by the Industrial Commission on 5 June 1995, is hereby SET ASIDE.
2. The following claims and issues are hereby RESERVED:
a. Plaintiffs claim for permanent partial disability compensation under G.S. 97-31.
b. Plaintiffs claim for permanent disability compensation for the time period beginning 24 September 1994, under G.S. 97-29.
c. Plaintiffs claim for any additional medical treatment.
d. Plaintiffs claim for temporary total disability compensation for the time period beginning 14 January 1995 to 5 May 1995.
e. Defendants claim for a credit for amounts paid to plaintiff during this time period.
f. Plaintiffs claim for temporary partial disability compensation, if any.
3. Defendants claim for attorneys fees is denied.
4. Defendant shall pay an expert witness fee in the amount of $1,120.80 to Dr. Dye.
5. Each side shall pay its own costs.
S/_______________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_______________ DIANNE C. SELLERS COMMISSIONER
S/_______________ CHRISTOPHER SCOTT COMMISSIONER