THE COUNTRY CLUB OF JOHNSTON COUNTY, INC., PLAINTIFF v. UNITED STATES FIDELITY & GUARANTY COMPANY, DEFENDANT

No. COA01-726

(Filed 21 May 2002)

**1. Collateral Estoppel and Res Judicata— claim-splitting— compulsory counterclaims**

The trial court did not err in an unfair and deceptive trade practices case by denying defendant insurance company's motions to dismiss, for directed verdict, and for judgment notwithstanding the verdict or new trial even though defendant contends plaintiff insured's claims should have been barred by the rule against claim-splitting and plaintiff's claims were required to be brought as compulsory counterclaims in defendant's declaratory judgment action, because: (1) the instant case involves different claims than those involved in the declaratory judgment action; and (2) defendant failed to establish that the claims presented are compulsory counterclaims under N.C.G.S. § 1A-1, Rule 13(a) since it has failed to established that plaintiff knew or reasonably should have known of all material facts necessary to assert all claims.

**2. Unfair Trade Practices— insurance policy—contractual right to coverage**

The trial court did not err in an unfair and deceptive trade practices case by denying defendant insurance company's motions to dismiss, for directed verdict, and for judgment notwithstanding the verdict or new trial even though defendant contends plaintiff insured cannot maintain a claim under N.C.G.S. § 75-1.1 where there is no contractual right to coverage under the

COUNTRY CLUB OF JOHNSON CTY., INC. v. U.S. FIDELITY & GUAR. CO.

[150 N.C. App. 231 (2002)]

insurance policy, because: (1) defendant's argument is based on the faulty premise that plaintiff's policy did not provide coverage for the accident at issue; and (2) it has already been established that the policy at issue provided coverage to plaintiff.

### 3. Unfair Trade Practices— insurance policy—unfair claims settlement practices in insurance industry

Although defendant insurance company contends plaintiff insured cannot maintain a claim under N.C.G.S. § 75-1.1 where it failed to plead and prove a claim under N.C.G.S. § 58-63-15(11) which sets forth various acts which constitute unfair claims settlement practices in the insurance industry, an insurer may violate N.C.G.S. § 75-1.1 separate and apart from a violation of Chapter 58 and a plaintiff need not prove a violation of Chapter 58 in order to recover for unfair and deceptive trade practices.

### 4. Unfair Trade Practices— misconduct—aggravating circumstance

The trial court did not err by concluding that plaintiff insured established misconduct on the part of defendant insurance company or an aggravating circumstance necessary to support an unfair and deceptive trade practices claim under N.C.G.S. § 75-1.1, because: (1) courts may look to types of conduct prohibited by N.C.G.S. § 58-63-15(11) for examples of conduct constituting unfair and deceptive acts under N.C.G.S. § 75-1.1, and defendant's actions violated at least one of the acts prohibited by N.C.G.S. § 58-63-15(11); and (2) the jury's verdict that defendant improperly determined it would deny coverage, misrepresented the nature of its investigation to plaintiff, and unfairly and improperly cited an exclusion as its basis to send a reservation of rights letter supports a conclusion that the insurer's acts were unethical and involved an unfair assertion of its power.

### 5. Costs— attorney fees—reasonableness—unfair and deceptive trade practices

The trial court did not abuse its discretion in an unfair and deceptive trade practices case by awarding costs and attorney fees under N.C.G.S. § 75-16.1 to plaintiff, because: (1) the trial court made extensive findings, including the required findings regarding the willful nature of defendant's acts and its unwillingness to facilitate a resolution of the matter; and (2) the trial court made appropriate findings concerning the reasonableness of attorney fees, including those addressed to the time and labor

COUNTRY CLUB OF JOHNSON CTY., INC. v. U.S. FIDELITY & GUAR. CO.

[150 N.C. App. 231 (2002)]

expended by the attorney, the skill required to perform the services rendered, the experience and ability of the attorney, and the customary fee for like work.

Appeal by defendant from judgment and orders entered 27 November 2000 by Judge Jack A. Thompson in Johnston County Superior Court. Heard in the Court of Appeals 13 March 2002.

*W. Brian Howell, P.A., by W. Brian Howell and T. Cooper Howell; Armstrong & Armstrong, P.A., by L. Lamar Armstrong, Jr., for plaintiff-appellee.*

*Wilson & Iseman, by G. Gray Wilson and Kevin B. Cartledge, for defendant-appellant.*

HUNTER, Judge.

Defendant-appellant Unites States Fidelity and Guaranty Company ("USF&G") appeals the entry of judgment based upon a jury verdict concluding that USF&G committed an unfair and deceptive act or practice in violation of N.C. Gen. Stat. § 75-1.1 (1999), and awarding treble damages, and orders denying its motions and awarding costs and attorney's fees. For reasons stated herein, we hold the trial court did not err in denying USF&G's motions and in concluding that USF&G's actions as found by the jury amounted to a violation of N.C. Gen. Stat. § 75-1.1.

This is the fourth appeal to this Court involving these parties and stemming from an incident which occurred 18 October 1991. On that date, a member of plaintiff-appellee The Country Club of Johnston County, Inc. ("the Club") consumed several alcoholic beverages at the Club following a golf tournament. While driving home, the member struck another vehicle, killing its driver and seriously injuring a passenger. On the date of the accident, the Club was insured by USF&G under a master insurance policy including commercial general liability coverage ("the policy"). In May 1993, the family of the decedent instituted an action against the member and the Club in Wake County Superior Court. *See Sanders, et al. v. Upton*, 93 CVS 4415 ("*Sanders*"). USF&G defended the Club in *Sanders* under a reservation of rights regarding coverage, and the case was ultimately settled.

In July 1993, USF&G filed a declaratory judgment action seeking a determination that the policy afforded no coverage to the Club for

COUNTRY CLUB OF JOHNSON CTY., INC. v. U.S. FIDELITY & GUAR. CO.

[150 N.C. App. 231 (2002)]

the damages alleged in *Sanders* because of a liquor liability exclusion in the policy (hereinafter "Exclusion C").[1] The Club filed an answer and a counterclaim alleging USF&G negligently failed to provide an extension of its coverage despite knowledge of the Club's alcohol practices. While an appeal to this Court was pending, the Club voluntarily dismissed its counterclaim without prejudice and instituted the present action on 23 January 1995. The amended complaint alleged, among other things, claims against USF&G for bad faith and unfair and deceptive practices in violation of N.C. Gen. Stat. § 75-1.1.

In July 1995, this Court rendered an opinion in USF&G's declaratory judgment action. *See U.S. Fidelity & Guaranty Co. v. Country Club of Johnston County*, 119 N.C. App. 365, 458 S.E.2d 734, *disc. review denied*, 341 N.C. 656, 462 S.E.2d 527 (1995) (*"USF&G I"*). In *USF&G I*, we reversed the trial court's entry of summary judgment in favor of USF&G, holding that although the policy contained a liquor liability coverage exclusion, there remained genuine issues of material fact as to whether USF&G was precluded from denying coverage under the doctrines of estoppel and waiver. *Id.* at 374-75, 458 S.E.2d at 740-41. On remand, the trial court granted summary judgment in favor of the Club, finding that USF&G waived its right to enforce Exclusion C as a matter of law. In June 1997, this Court affirmed that judgment, and the Supreme Court denied review, thereby establishing that the Club was entitled to coverage. *See U.S. Fidelity and Guaranty Co. v. Country Club of Johnston Co.*, 126 N.C. App. 633, 491 S.E.2d 569 (unpublished opinion), *disc. review denied*, 347 N.C. 141, 492 S.E.2d 38 (1997) (*"USF&G II"*).

Following our decision in *USF&G II*, in November 1997, USF&G filed a motion to dismiss the Club's complaint in the present case under N.C. Gen. Stat. § 1A-1, Rule 12(b)(1) and (6) (1999). The motion was denied, and USF&G filed an appeal with this Court, which we dismissed as interlocutory. *See Country Club of Johnston County, Inc. v. U.S. Fidelity and Guar. Co.*, 135 N.C. App. 159, 519 S.E.2d 540 (1999), *disc. review denied*, 351 N.C. 352, 542 S.E.2d 207 (2000) (*"Country Club I"*). The Club's claims proceeded to trial.

The evidence presented at trial tended to show that in April 1991, USF&G directed its underwriters to attach to the policies of insureds who serve alcohol an amendment further restricting coverage for liquor liability. The amendment, called CG-2150, amended

---

1. Although Exclusion C is entitled "Amendment of Liquor Liability Exclusion," we note that the exclusions applied to all "alcoholic beverages."

COUNTRY CLUB OF JOHNSON CTY., INC. v. U.S. FIDELITY & GUAR. CO.

[150 N.C. App. 231 (2002)]

Exclusion C, the policy's general liquor liability coverage exclusion, which excluded coverage for insureds "in the business of" selling or furnishing alcohol. The CG-2150 amendment was intended to clarify that, as to insureds who regularly serve alcohol, the general liability coverage under their policy would not be enough to provide coverage for their alcohol practices, and that they would be required to pay an additional premium if they wished to have coverage for such practices. Under the CG-2150 amendment, the exclusion would also apply to insureds who "[s]erve or furnish alcoholic beverages without a charge, if a license is required for such activity."

In August 1991, shortly before the accident, senior USF&G underwriter Catherine Davis reviewed the Club's underwriting report which contained details regarding its alcohol practices, including that the Club had a brown-bagging alcohol license. Davis made handwritten notes on the report indicating that because the Club had an alcohol license, the CG-2150 endorsement must be applied to its policy to inform the Club that it would be required to procure additional insurance if it desired coverage for its alcohol practices. Despite Davis' notation that CG-2150 should attach to the Club's policy due to its liquor license, the Club maintained that it was not informed by USF&G that its general policy did not provide coverage for its alcohol activities or that it would be required to purchase additional coverage. The Club produced Davis' notes from a September 1991 telephone conversation with USF&G agent David Grady, also a member of the Club, wherein Grady informed Davis that Club members only "brown bag" approximately six times per year. Thus, Davis concluded that the Club did not "appear to be a large exposure," and that she was "going to delete CG-2150." Davis later maintained that Grady had failed to inform her, and that she was unaware, that Club members could also purchase beer at the Club. Following the accident, Davis sent a letter to the Club informing it that USF&G would now be attaching the CG-2150 amendment to its policy.

The Club also presented evidence establishing that when the claim was made, the matter was examined by claims supervisor Douglas Funk, who determined that Exclusion C, the original liquor liability coverage exclusion, did not bar coverage. Funk testified that according to his notes dated 19 November 1991, he recommended that USF&G not send a reservation of rights letter on the basis that Exclusion C applied, and noted that the Club did not appear to be in the business of serving or furnishing alcohol. On 20 November 1991, USF&G did send a reservation of rights letter stating that USF&G

COUNTRY CLUB OF JOHNSON CTY., INC. v. U.S. FIDELITY & GUAR. CO.

[150 N.C. App. 231 (2002)]

believed Exclusion C might apply to bar coverage, and that the matter would be further investigated. The following day, 21 November 1991, a USF&G home office claims examiner concluded that "we are going to take the position of no coverage."

Don Roinestad, who testified as an insurance expert in the fields of underwriting and claims handling, concluded that USF&G had failed to follow "acceptable claims practices" throughout the handling of the Club's claim. He testified that by failing to attach the CG-2150 amendment further restricting liquor liability coverage, Davis, and as a result USF&G, automatically accepted that there was coverage under the policy as it existed. He further testified that the sending of a reservation of rights letter in part based upon the applicability of Exclusion C was "totally inappropriate" because "the claims people . . . already knew at th[at] time that Cathy Davis and the agent [David Grady] agreed to provide this coverage for the insured." Roinestad also testified that USF&G failed to properly document its claims process, observing that key conversations regarding the Club's claim were never documented and placed in its file.

On 15 August 2000, the jury returned a verdict in favor of the Club as to damages and proximate cause, answering the following four special interrogatories in the affirmative:

a. Did USF&G prematurely and improperly determine that it was going to deny coverage prior to conducting a meaningful investigation?

b. Did USF&G misrepresent that it was investigating the application of Exclusion C when USF&G had determined that it was going to deny coverage?

c. Did USF&G solicit an opinion letter from counsel after having already made a decision to deny coverage?

d. Did USF&G unfairly or improperly send a "reservation of rights" letter on 11/20/91 citing Exclusion C, without having an adequate or documented basis to reverse Mr. Funk's position to not reserve rights as to Exclusion C documented on 11/19/91?

The jury answered the remaining two interrogatories in favor of USF&G, declining to find the insurer responsible for its attorney's conduct of removing Davis' handwritten notes regarding the CG-2150

COUNTRY CLUB OF JOHNSON CTY., INC. v. U.S. FIDELITY & GUAR. CO.

[150 N.C. App. 231 (2002)]

amendment from the copy of USF&G's underwriting report provided to the Club during discovery in the declaratory judgment action:

> e. Did USF&G participate in an unfair or deceptive alteration of Cathy Davis' handwritten notes on page two of the underwriting report?

> f. Did USF&G participate in an unfair or deceptive use of the underwriting report that had been altered by the deletion of Cathy Davis' handwritten notes?

The jury awarded the Club $90,000.00 in damages. With the Club's consent, the trial court entered a remittitur on 27 November 2000 which reduced the damage award to $43,312.53, the amount which both parties agreed was what the Club had expended in attorney's fees defending USF&G's declaratory judgment action. By this order, the trial court also denied USF&G's post-trial motions for judgment notwithstanding the verdict, or in the alternative, a new trial. By judgment entered 27 November 2000, the trial court concluded as a matter of law, based on the jury's interrogatories and the court's independent review of the evidence, that USF&G committed an unfair and deceptive act or practice in violation of N.C. Gen. Stat. § 75-1.1. The trial court trebled the damages to $129,937.59 pursuant to N.C. Gen. Stat. § 75-16 (1999). In a separate order, the trial court made extensive findings of fact with respect to costs and attorney's fees and taxed $12,530.52 in costs and $154,078.75 in attorney's fees to USF&G. USF&G appeals from the verdict and judgment, from the denial of its post-trial motions, and from the order taxing costs and attorney's fees.

USF&G brings forth several assignments of error on appeal, which we address within the following five issues: whether the trial court erred in failing to grant USF&G's motions to dismiss, for directed verdict, and for judgment notwithstanding the verdict or new trial because (1) the Club's complaint was barred by the rule against claim-splitting and because its claims were compulsory counter-claims in USF&G's declaratory judgment action; (2) a claim under N.C. Gen. Stat. § 75-1.1 cannot be maintained in the absence of a contractual right to coverage under the policy; (3) the Club's claim under N.C. Gen. Stat. § 75-1.1 cannot stand where the Club failed to plead and prove a claim under N.C. Gen. Stat. § 58-63-15(11) (1999); (4) the Club failed to show any misconduct or aggravated circumstances sufficient to support a claim under N.C. Gen. Stat. § 75-1.1; and (5) attorney's fees and costs were unwarranted under N.C. Gen. Stat. § 75-16.1

COUNTRY CLUB OF JOHNSON CTY., INC. v. U.S. FIDELITY & GUAR. CO.

[150 N.C. App. 231 (2002)]

(1999), and were unreasonable in amount. We conclude the trial court did not err in denying any of USF&G's motions and in determining, as a matter of law, that USF&G's actions as found by the jury constituted an unfair and deceptive act or practice in violation of N.C. Gen. Stat. § 75-1.1, thereby warranting treble damages, attorney's fees, and costs.

Preliminarily, we note that the standard of review on a motion to dismiss under Rule 12(b)(1) for lack of jurisdiction is *de novo*. *Fuller v. Easley*, 145 N.C. App. 391, 395, 553 S.E.2d 43, 46 (2001). For a motion based on Rule 12(b)(6), the standard is whether, construing the complaint liberally, " 'the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory.' " *Block v. County of Person*, 141 N.C. App. 273, 277, 540 S.E.2d 415, 419 (2000) (citation omitted). Our standard of review for a ruling on motions for directed verdict and judgment notwithstanding the verdict are the same: "whether, 'upon examination of all the evidence in the light most favorable to the nonmoving party, and that party being given the benefit of every reasonable inference drawn therefrom, the evidence is sufficient to be submitted to the jury.' " *Stamm v. Salomon*, 144 N.C. App. 672, 679, 551 S.E.2d 152, 157 (2001) (citation omitted), *appeal dismissed and disc. review denied*, 355 N.C. 216, 560 S.E.2d 139 (2002). Moreover, " '[t]he trial court's determination on the grant or denial of an alternative new trial is reversible only for an abuse of discretion.' " *In re Buck*, 350 N.C. 621, 627, 516 S.E.2d 858, 862 (1999) (citation omitted).

I.

[1] USF&G first argues that the trial court erred in denying its motions both because the Club's complaint should have been barred by the rule against claim-splitting and because the Club's claims were required to be brought as compulsory counterclaims in USF&G's declaratory judgment action. We disagree with both arguments.

First, USF&G argues that the Club's claims in this case should be barred by *res judicata*, and specifically, the rule against claim-splitting because the Club knew of the claims which it brings forth here at the time USF&G filed its declaratory judgment action. Thus, USF&G argues, the Club was required to have brought forth its claims in the declaratory judgment action because they arose out of the same factual background and transactions addressed in that action, and the claims are now barred from being litigated in this case.

COUNTRY CLUB OF JOHNSON CTY., INC. v. U.S. FIDELITY & GUAR. CO.

[150 N.C. App. 231 (2002)]

"[T]he common law rule against claim-splitting is based on the principle that all damages incurred as the result of a single wrong must be recovered in one lawsuit." *Bockweg v. Anderson*, 333 N.C. 486, 492, 428 S.E.2d 157, 161 (1993). "Where the second action between two parties is upon the same claim, the prior judgment serves as a bar to the relitigation of all matters that were or should have been adjudicated in the prior action." *Id.* However, if the second action involves a different claim, "the prior judgment serves as a bar only as to issues actually litigated and determined in the original action." *Id.* "While it is true that a 'judgment is conclusive as to all issues raised by the pleadings,' the judgment is not conclusive as to issues not raised by the pleadings which serve as the basis for the judgment." *Id.* at 492, 428 S.E.2d at 161-62 (citation omitted).

Thus, in *Bockweg*, our Supreme Court determined that where the negligence claims at issue were previously dismissed voluntarily from a prior federal court action and were not the basis of the prior judgment, the prior judgment could not operate to bar subsequent prosecution of the claims in state court. *Id.* at 493, 428 S.E.2d at 162. The defendants in *Bockweg* advocated application of the "transactional approach" to claim-splitting wherein "all issues arising out of 'a transaction or series of transactions' must be tried together as one claim." *Id.* The Supreme Court declined to adopt this approach and concluded that the subsequent action, which involved a claim arising out of a separate instance of negligence, could not be barred by the prior federal court judgment "since the pleadings upon which the judgment in the prior action was based did not raise the claim now presented." *Id.* at 496, 428 S.E.2d at 164.

We have previously observed that the courts of this State have not adopted the transactional approach to claim-splitting. *See Northwestern Financial Group v. County of Gaston*, 110 N.C. App. 531, 537, 430 S.E.2d 689, 693, *disc. review denied*, 334 N.C. 621, 435 S.E.2d 337 (1993). The defendants in *Northwestern* attempted to distinguish *Bockweg* (which involved two separate instances of negligence) from their case, which involved two claims based upon the same wrongful act of denying a permit. *Id.* at 538, 430 S.E.2d at 694. The defendants argued that the second action did not raise anything new, but instead simply changed the legal argument and the remedy sought. *Id.* Nevertheless, this Court held that the second action was permissible, stating:

Though it is true that both Northwestern's suits arise out of the same set of facts and circumstances, Northwestern alleges that

COUNTRY CLUB OF JOHNSON CTY., INC. v. U.S. FIDELITY & GUAR. CO.

[150 N.C. App. 231 (2002)]

its claims for damages could not have been known until after it was granted the mandatory injunction. We believe that this is a pivotal distinction. It is well established that all of a party's damages resulting from a single wrong must be recovered in a single action. . . . However, for this rule to apply, logic and common sense require that both remedies must have been available at the time the first action was commenced.

*Id.* at 538-39, 430 S.E.2d at 694.

In the present case, aside from the fact that the Club voluntarily dismissed its sole counterclaim prior to its being litigated, we agree with the Club's position that the instant action involves different claims than those involved in the declaratory judgment action. The declaratory judgment action involved issues of coverage such as waiver and estoppel, and not the issues presented in this suit, namely, bad faith and unfair and deceptive practices. To the extent the Club's counterclaim in the declaratory judgment action, which simply alleged USF&G's negligence in failing to provide adequate coverage for the Club's alcohol practices, addressed USF&G's actions, it did not assert a claim for unfair and deceptive practices, and it did not address USF&G's handling of the claim after the accident, which was the basis for the judgment in the instant case. Indeed, the amended complaint in the present case contains factual allegations far exceeding those in the declaratory judgment action, including several allegations regarding USF&G's handling of the Club's claim, which were neither pled nor at issue in the declaratory judgment action.

Moreover, the Club maintains that it did not assert its claims for bad faith and unfair and deceptive practices in the declaratory judgment action because at that time it was not and could not have been fully aware of the facts which now form the basis of its claims, nor the extent of its damages. The record supports the Club's assertion that it began to discover the facts surrounding USF&G's handling of its policy and its claim as discovery proceeded in the declaratory judgment action. Thus, as we observed in *Northwestern*, logic and common sense require the conclusion that the Club cannot be required to have brought a claim of which it could not have reasonably known at the time of the first action. Even USF&G acknowledges in its brief that a party is required to try his whole cause of action at one time only when the party has "full knowledge of his damages as well as the facts giving rise to his cause of action." Although USF&G argues that the Club knew at the time it filed its answer and counterclaim of all facts necessary to bring its entire cause of action against

COUNTRY CLUB OF JOHNSON CTY., INC. v. U.S. FIDELITY & GUAR. CO.

[150 N.C. App. 231 (2002)]

USF&G, including its claim for unfair and deceptive practices, USF&G has failed to persuasively establish that such was the case. Contrary to USF&G's assertion, the Club did not plead claims relating to USF&G's failure to investigate in its answer to the declaratory judgment action.

We conclude that the Club's complaint in the present case was not barred by *res judicata* because it did not bring forth claims which had already been litigated. Rather, it brought forth entirely different claims, based in part upon USF&G's actions in handling the Club's claim, which were not at issue in the declaratory judgment action and which were not fully known to the Club at that time. For the same reasons, we overrule USF&G's related argument that the present claims were required to have been brought as compulsory counterclaims in the declaratory judgment action.

Under N C. Gen. Stat. § 1A-1, Rule 13(a) (1999), a party is required to plead as a counterclaim

> any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Under this rule, a counterclaim is compulsory only "when it is in existence at the time of the serving of the pleading." *U.S. Fire Ins. Co. v. Southeast Airmotive Corp.*, 102 N.C. App. 470, 472, 402 S.E.2d 466, 468, *disc. review denied*, 329 N.C. 505, 407 S.E.2d 553 (1991).

Thus, where a claim is not mature at the time of the filing of the action, failure to bring it as a counterclaim does not serve as a bar to subsequent litigation on that claim. *Stines v. Satterwhite*, 58 N.C. App. 608, 614, 294 S.E.2d 324, 328 (1982). Moreover, even where the claim matures after the pleadings have been filed but during the pendency of the action, the pleader is not required to supplement the pleadings with a compulsory counterclaim. *Id.* Therefore, in *Stines*, we held that where the complaint in the subsequent action averred that material facts were not known at the time of the preceding action, the claims based thereon could not have been compulsory counterclaims, and the plaintiffs were not barred from bringing the subsequent action. *Id.* We observed that the plaintiffs "cannot be expected to plead that which they did not know." *Id.* Likewise, in

COUNTRY CLUB OF JOHNSON CTY., INC. v. U.S. FIDELITY & GUAR. CO.

[150 N.C. App. 231 (2002)]

*Driggers v. Commercial Credit Corp.*, 31 N.C. App. 561, 230 S.E.2d 201 (1976), we held that:

> Since there is no showing that [plaintiff] knew or by the exercise of reasonable diligence should have known of his alleged claim for fraud at the time he served answer in the prior action, his claim falls within the exception to Rule 13(a) and constitutes a permissive, not compulsory, counterclaim. His failure to assert his claim in the prior action is therefore not a bar to his present action.

*Id.* at 565, 230 S.E.2d at 203.

In this case, USF&G has failed to establish that the claims presented here are compulsory counterclaims because, as previously discussed, it has failed to establish that the Club knew or reasonably should have known of all material facts necessary to assert all claims. To the contrary, the Club asserts, and the record supports, that the true extent of USF&G's actions and the facts which constitute the basis of the Club's claims in this case were not fully known to the Club at the time the declaratory judgment action was filed, but rather, became clear to the Club throughout the pendency of that action. None of the allegations in the Club's answer or counterclaim in the prior action reveals that the Club had any knowledge regarding the manner in which USF&G handled the investigation of its claim. Moreover, the amended complaint in this case avers that it was not until 1996 that the Club discovered that Catherine Davis originally determined the CG-2150 amendment should apply to the Club's policy due to its liquor license, and that USF&G had deleted Davis' notes from the copy of the underwriting report previously provided to the Club during discovery (which fact helped form the basis for the Club's bad faith claim). The trial court did not err in denying USF&G's motions on these grounds. These assignments of error are overruled.

## II.

[2] USF&G next argues that the trial court erred in denying its motions because the Club cannot maintain a claim under N.C. Gen. Stat. § 75-1.1 where there is no contractual right to coverage under the policy. Specifically, USF&G argues that such claims "are grounded in and arise from the contractual relationship between insurer and insured," and because the Club's policy did not provide coverage, it cannot maintain an "extracontractual claim."

COUNTRY CLUB OF JOHNSON CTY., INC. v. U.S. FIDELITY & GUAR. CO.

[150 N.C. App. 231 (2002)]

We need not engage in a discussion of whether a claim under N.C. Gen. Stat. § 75-1.1 in this context must be grounded in contract, as USF&G's argument is based on the faulty premise that the Club's policy did not provide coverage for the accident at issue. In fact, in *Country Club I*, this Court rejected this same argument and squarely established that the policy provided coverage to the Club. *See Country Club of Johnston County, Inc.*, 135 N.C. App. at 165, 519 S.E.2d at 545. In that case, we noted that "USF&G has continued to insist the policy afforded no coverage and that the Club therefore may not assert a bad faith claim," despite the fact that such argument was already addressed and rejected in *USF&G II. Id.* at 165, 519 S.E.2d at 544. We went on to clarify:

> USF&G also overlooks the estoppel effect of conduct comprising waiver. It is not that the conduct of USF&G and that of its agents has operated to write into the policy coverage previously excluded; rather, conduct comprising waiver has created a disability on the part of USF&G thereby precluding it from thereafter *denying* that such coverage is included within the policy.
>
> . . .
>
> In short, the issue in the instant case is no longer one of coverage . . . .

*Id.* at 165, 519 S.E.2d at 545. We have therefore previously established that the policy at issue provided coverage to the Club, and have already rejected the argument which USF&G has brought forth again here. This argument is overruled.

### III.

[3] USF&G further contends that the Club cannot maintain a claim under N.C. Gen. Stat. § 75-1.1 where it failed to plead and prove a claim under N.C. Gen. Stat. § 58-63-15(11), which sets forth various acts which constitute unfair claims settlement practices in the insurance industry. USF&G argues that in order to maintain a claim under Chapter 75, the Club was required to have established an unfair claims settlement practice under N.C. Gen. Stat. § 58-63-15(11), which also requires a showing that the act was committed "with such frequency as to indicate a general business practice." N.C. Gen. Stat. § 58-63-15(11). We likewise reject this argument.

This Court has noted "that unfair and deceptive acts in the insurance area are not regulated exclusively by Article 63 of Chapter 58,

COUNTRY CLUB OF JOHNSON CTY., INC. v. U.S. FIDELITY & GUAR. CO.

[150 N.C. App. 231 (2002)]

but are also actionable under N.C. Gen. Stat. § 75-1.1 (1988)." *Golden Rule Insurance Co. v. Long*, 113 N.C. App. 187, 196, 439 S.E.2d 599, 604, *appeal dismissed and disc. review denied*, 335 N.C. 555, 439 S.E.2d 145 (1993). In *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 529 S.E.2d 676, *reh'g denied*, 352 N.C. 599, 544 S.E.2d 771 (2000), our Supreme Court observed that "[a]lthough N.C.G.S. § 58-63-15(11) does regulate settlement claims in the insurance industry, insurance companies are not immune to the general principles and provisions of N.C.G.S. § 75-1.1." *Id.* at 71, 529 S.E.2d at 683. In *Gray*, the Supreme Court held that an insurer's act of failing to attempt in good faith to effectuate prompt and fair claims settlements is a violation of N.C. Gen. Stat. § 75-1.1 "separate and apart from any violation of N.C.G.S. § 58-63-15(11)." *Id.* at 73, 529 S.E.2d at 684. The Court noted that having determined the insurer could violate N.C. Gen. Stat. § 75-1.1 separate and apart from N.C. Gen. Stat. § 58-63-15(11), it was unnecessary to determine whether the plaintiffs had established that the acts occurred with such frequency as to constitute a general business practice, as is required to show a violation of N.C. Gen. Stat. § 58-63-15(11). *Id.* at 74, 529 S.E.2d at 684.

This Court has also summarized the relationship between the two statutes:

An unfair or deceptive trade practice claim against an insurance company can be based on violations of either section 75-1.1 or section 58-63-15. A violation of section 58-63-15, however, constitutes a violation of section 75-1.1. Furthermore, *the* remedy for a violation of section 58-63-15 is the filing of a section 75-1.1 claim. *There is no requirement, however, that a party bringing a claim for unfair or deceptive trade practices against an insurance company allege a violation of section 58-63-15 in order to bring a claim pursuant to section 75-1.1.*

*Lee v. Mut. Community Sav. Bank*, 136 N.C. App. 808, 811 n.2, 525 S.E.2d 854, 857 n.2 (2000) (citations omitted) (emphasis added).

Moreover, federal courts interpreting North Carolina law have also recognized that a party may bring an independent claim under N.C. Gen. Stat. § 75-1.1 against an insurer. In *High Country Arts and Craft v. Hartford Fire Ins.*, 126 F.3d 629 (4th Cir. 1997), the United States Court of Appeals for the Fourth Circuit observed that

[w]hile proof of unfair claims practices does constitute per se proof of an unfair or deceptive trade practice under N.C. Gen.

COUNTRY CLUB OF JOHNSON CTY., INC. v. U.S. FIDELITY & GUAR. CO.

[150 N.C. App. 231 (2002)]

Stat. § 75-1.1, failure to prove unfair claims practices [under N.C. Gen. Stat. § 58-63-15(11)] does not independently necessitate judgment as a matter of law against a related claim for unfair trade practices.

*Id.* at 635 (citations omitted).

In *U.S. Fire Ins. Co. v. Nationwide Mut. Ins. Co.*, 735 F. Supp. 1320 (E.D.N.C. 1990), the Unites States District Court for the Eastern District of North Carolina observed that our courts have held that Chapter 58 "is not the exclusive state remedy for unfair trade practices in the insurance industry." *Id.* at 1327. In that case, the insurer argued, as does USF&G in this case, that the plaintiffs were required to allege a violation of Chapter 58 in order to show a violation of Chapter 75. The Court rejected the argument, stating that "[a]bsent an explicit holding by the North Carolina courts that a plaintiff must prove a Chapter 58 violation to prove a Chapter 75 violation, this court will not impose such a requirement." *Id.*

In this case, USF&G has failed to cite any persuasive authority from this jurisdiction which would lead us to the conclusion that the Club had to establish a claim under N.C. Gen. Stat. § 58-63-15(11) in order to succeed on its claim under N.C. Gen. Stat. § 75-1.1. To the contrary, the case law cited herein establishes that an insurer may violate N.C. Gen. Stat. § 75-1.1 separate and apart from any violation of Chapter 58, and that a plaintiff need not prove a violation of Chapter 58 in order to recover for unfair and deceptive practices. Accordingly, this argument is overruled.

IV.

[4] We next address USF&G's claim that the Club failed to establish any misconduct on the part of USF&G or any aggravated circumstances necessary to support a claim under N.C. Gen. Stat. § 75-1.1. "In order to establish a violation of N.C.G.S. § 75-1.1, a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." *Gray*, 352 N.C. at 68, 529 S.E.2d at 681. " '[A] practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.' " *Id.* (citation omitted). "When 'an insurance company engages in conduct manifesting an inequitable assertion of power or position,' including conduct which can be characterized as 'unethical,' that 'conduct constitutes an unfair trade practice.' " *Johnson v. First Union Corp.*, 128 N.C. App. 450, 458, 496 S.E.2d 1, 6

COUNTRY CLUB OF JOHNSON CTY., INC. v. U.S. FIDELITY & GUAR. CO.

[150 N.C. App. 231 (2002)]

(1998) (citation omitted) (holding insurer's act of altering an agreement and misrepresenting the plaintiff's work duties sufficient to support claim under N.C. Gen. Stat. § 75-1.1).

As we have held, a plaintiff is not required to prove a violation of N.C. Gen. Stat. § 58-63-15(11) in order to succeed on an independent claim under N.C. Gen. Stat. § 75-1.1. Nevertheless, we may look to the types of conduct prohibited by N.C. Gen. Stat. § 58-63-15(11) for examples of conduct which would constitute an unfair and deceptive act or practice. *Gray*, 352 N.C. at 71, 529 S.E.2d at 683. In *Gray*, the Supreme Court determined that when an insurer is guilty of failing to attempt in good faith to effectuate prompt and fair claims settlements where liability is reasonably clear, an act prohibited by N.C. Gen. Stat. § 58-63-15(11)(f), the insurer "also engages in conduct that embodies the broader standards of N.C.G.S. § 75-1.1 because such conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers." *Id.* Thus, such an act constitutes a violation of N.C. Gen. Stat. § 75-1.1 "without the necessity of an additional showing of frequency indicating a 'general business practice,' " as is required under N.C. Gen. Stat. § 58-63-15(11)(f). *Id.* It follows that the other prohibited acts listed in N.C. Gen. Stat. § 58-63-15(11) are also acts which are unfair, unscrupulous, and injurious to consumers, and that such acts therefore fall within the "broader standards" of N.C. Gen. Stat. § 75-1.1.

In the present case, the trial court determined, as a matter of law, that USF&G's acts constituted a violation of N.C. Gen. Stat. § 75-1.1. *See Gray*, 352 N.C. at 68, 529 S.E.2d at 681 (the determination of whether an act or practice is an unfair or deceptive practice that violates N.C. Gen. Stat. § 75-1.1 is a question of law for the court, and may be based on the facts as determined by the jury). The trial court noted that it based its determination upon the jury's verdict with respect to the interrogatories, and "the Court's independent review of the evidence presented." As set forth in the interrogatories, the jury determined that USF&G "prematurely and improperly" determined it would deny the Club's claim prior to conducting a "meaningful investigation"; that USF&G "misrepresent[ed]" to the Club that it would investigate the claim and specifically, the application of Exclusion C when it had already concluded it would deny the claim; that USF&G "unfairly" and "improperly" sent a reservation of rights letter based on Exclusion C without having "an adequate or documented basis to reverse Mr. Funk's position to not reserve rights as to Exclusion C documented on 11/19/91"; and that USF&G solicited

COUNTRY CLUB OF JOHNSON CTY., INC. v. U.S. FIDELITY & GUAR. CO.

[150 N.C. App. 231 (2002)]

an opinion letter from counsel only after having made its decision regarding coverage.

In addition, in its order taxing attorney's fees and costs, the trial court made the following relevant findings of fact which are supported by the evidence: that "USF&G willfully engaged in the acts or practices at issue because, in its acts found by the jury, USF&G intended to deceive [the Club]"; "USF&G decided to deny coverage, documented this decision internally, and then misrepresented to [the Club] that USF&G was investigating coverage"; "USF&G knew that it prematurely and improperly denied [the Club] coverage without conducting a meaningful investigation and prior to obtaining an opinion letter from counsel"; that "[a]t the same time, USF&G misrepresented to [the Club] that USF&G was investigating the application of Exclusion C"; and that despite knowledge that the Club's claim had merit and that the Club simply sought restitution, USF&G engaged in an unwarranted refusal to fully resolve the claims constituting the basis for this suit.

We hold that the evidence presented and the jury's verdict warrants a conclusion that USF&G's actions constituted a violation of N.C. Gen. Stat. § 75-1.1. We find support for this conclusion particularly in looking to N.C. Gen. Stat. § 58-63-15(11) for guidance as to what types of acts are inherently unfair, unscrupulous, and injurious to consumers. *See Gray*, 352 N.C. at 71, 529 S.E.2d at 683 (courts may look to types of conduct prohibited by N.C. Gen. Stat. § 58-63-15(11) for examples of conduct constituting unfair and deceptive acts under N.C. Gen. Stat. § 75-1.1). USF&G's conduct arguably violates at least one of the following acts prohibited by N.C. Gen. Stat. § 58-63-15(11): (1) "[r]efusing to pay claims without conducting a reasonable investigation based upon all available information," N.C. Gen. Stat. § 58-63-15(11)(d); (2) "[f]ailing to promptly provide a *reasonable* explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim," N.C. Gen. Stat. § 58-63-15(11)(n) (emphasis added); (3) "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear," N.C. Gen. Stat. § 58-63-15(11)(f); and (4) "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue," N.C. Gen. Stat. § 58-63-15(11)(a).

Moreover, the jury's verdict that USF&G "improperly" determined it would deny coverage, "misrepresent[ed]" the nature of its investigation to the Club, and "unfairly" and "improperly" cited Exclusion C

COUNTRY CLUB OF JOHNSON CTY., INC. v. U.S. FIDELITY & GUAR. CO.

[150 N.C. App. 231 (2002)]

as its basis to send a reservation of rights letter supports a conclusion that the insurer's acts were unethical and involved an unfair assertion of its power. Such acts also support the conclusion that a violation of N.C. Gen. Stat. § 75-1.1 has occurred. *See Johnson*, 128 N.C. App. at 458, 496 S.E.2d at 6; *see also Miller v. Nationwide Mutual Ins. Co.*, 112 N.C. App. 295, 435 S.E.2d 537 (1993) (insurer's act in uniformly denying certain claims without first establishing a proper basis for refusal to pay sufficient to support claim under N.C. Gen. Stat. § 75-1.1), *disc. review denied*, 335 N.C. 770, 442 S.E.2d 519 (1994).

In summary, we uphold the trial court's conclusion of law that the evidence and the jury's verdict support a determination that USF&G violated N.C. Gen. Stat. § 75-1.1, notwithstanding that the jury returned two of six interrogatories in favor of USF&G. The trial court therefore did not err in denying USF&G's motions to dismiss, for directed verdict, and for judgment notwithstanding the verdict or new trial on this ground.

V.

[5] Finally, USF&G maintains the trial court erred in taxing attorney's fees and costs under N.C. Gen. Stat. § 75-16.1 and asserts that the amount of fees and costs was unreasonable. Under N.C. Gen. Stat. § 75-16.1, a trial court has discretion in actions based upon a violation of N.C. Gen. Stat. § 75-1.1 to award attorney's fees where the trial court determines that "[t]he party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit." N.C. Gen. Stat. § 75-16.1(1). An award or denial of attorney's fees under this section is within the sound discretion of the trial court. *Southern Bldg. Maintenance v. Osborne*, 127 N.C. App. 327, 335, 489 S.E.2d 892, 897 (1997).

In this case, the trial court made extensive findings, including the required findings regarding the willful nature of USF&G's acts and its unwillingness to facilitate a resolution of the matter. Based on its extensive findings, the trial court concluded that USF&G had both willfully engaged in the acts at issue and engaged in an unwarranted refusal to fully resolve the Club's claims. Given our review of the evidence, we cannot conclude that the trial court's findings and conclusion are wholly unsupported or that the decision to award fees was either " 'manifestly unsupported by reason' " or " 'so arbitrary that it could not have been the result of a reasoned decision.' " *See Williams*

COUNTRY CLUB OF JOHNSON CTY., INC. v. U.S. FIDELITY & GUAR. CO.

[150 N.C. App. 231 (2002)]

*v. McCoy*, 145 N.C. App. 111, 117, 550 S.E.2d 796, 801 (2001) (citation omitted) (defining abuse of discretion standard).

In addition, the trial court must make findings as to whether the amount of attorney's fees is reasonable. *Barbee v. Atlantic Marine Sales & Service*, 115 N.C. App. 641, 648, 446 S.E.2d 117, 122, *disc. review denied*, 337 N.C. 689, 448 S.E.2d 516 (1994). To that end, appropriate findings would include those addressed to the time and labor expended by the attorney, the skill required to perform the services rendered, the experience and ability of the attorney, and the customary fee for like work. *Id.*

The trial court in this case made all required findings, including (1) that the case involved difficult issues which warranted the involvement of more than one attorney for the Club; (2) that USF&G had at least two and sometimes three attorneys assisting with its case; (3) that it was reasonable for the Club to seek the legal assistance of the counsel involved in the trial, as both attorneys had prior involvement in the case and possessed significant knowledge of the facts and legal issues that were crucial to successful prosecution of the Club's claims; (4) that the Club's attorneys have extensive experience and provided high quality legal services that enabled the Club to obtain a favorable judgment in a very difficult case; (5) that the attorneys' rates were reasonable and consistent with those charged by attorneys with equivalent expertise and experience; (6) that the Club's attorneys divided duties in a reasonable manner so as to avoid duplication of services; (7) that the affidavits provided by both attorneys accurately reflect the services provided; and (8) that these services were reasonable and necessary for prosecution of the Club's claims. The trial court also made findings regarding the exact time expended by each attorney.

The trial court's extensive findings are sufficiently supported by evidence in the record. USF&G has failed to persuade us that the trial court's award of attorney's fees is manifestly unsupported by reason or wholly arbitrary. Accordingly, and for all reasons stated herein, we uphold the decisions of the trial court with respect to the denials of USF&G's motions, and we conclude that the trial was free of error.

No error.

Judges WALKER and BRYANT concur.