Mae K. SMITH, Plaintiff,

v.

JEFFERSON PILOT FINANCIAL IN-SURANCE COMPANY and Guarantee Life Insurance Company, Defendants.

No. 1:04 CV 00321.

United States District Court, M.D. North Carolina.

Feb. 9, 2005.

---

Rachel Scott Decker, Greensboro, NC, for Plaintiff.

Thomas D. Garlitz, Charlotte, NC, for Defendants.

## MEMORANDUM OPINION

TILLEY, Chief Judge.

This suit arises from a dispute between Plaintiff Mae Smith and Defendants Jefferson Pilot Financial Insurance Company ("Jefferson Pilot") and Guarantee Life Insurance Company[1] ("Guarantee Insurance") regarding Defendants' failure to pay Ms. Smith's disability claims. The case is currently before the Court on Defendants' Motion to Strike Immaterial Allegations [Doc. # 4]. For the reasons set forth below, the Defendants' Motion will be GRANTED, Ms. Smith's state claims are found to be preempted by ERISA and she will be given 30 days from this date to refile in this Court under ERISA.

### I.

The facts in the light most favorable to the Plaintiff are as follows: Ms. Smith worked as a floor and charge nurse at High Point Regional Hospital. As a benefit of her employment, Ms. Smith received long term and short term disability insurance through group insurance policies issued by Guarantee Insurance to High Point Regional Hospital for the benefit of its employees. These policies of disability insurance were fully insured policies and were not self-funded by High Point Regional Hospital.

During Ms. Smith's employment with High Point Regional Hospital, she became unable to perform her duties at work, and her physician ordered her to discontinue working. Ms. Smith quit working, and she made claims under both her short term and long term disability policies issued by Guarantee Insurance. Defendants refused to pay and continue to refuse to pay benefits to Ms. Smith, notwithstanding Ms. Smith's physician's continued orders that she not perform her work with High Point Regional Hospital.

---

1. Guarantee Insurance is a wholly owned subsidiary of Jefferson Pilot.

On March 10, 2004, Ms. Smith filed a Complaint [Doc. # 1] in the Superior Court of Guilford County, North Carolina, alleging that Defendants' denial of benefits constituted unfair and deceptive trade practices under §§ 58–63–15(11) and 75–1.1 et. seq. of the General Statutes of North Carolina. Specifically, the Complaint alleges that Defendants:

(a) failed to acknowledge and act reasonably promptly upon commitments with respect to claims arising under policies of insurance; [and]

(b) compelled the insured to instigate litigation to recover amounts due under the policy;

(Compl.¶ 13.) Defendants removed the lawsuit to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1441(b). On April 21, 2004, Defendants moved to strike four paragraphs of Ms. Smith's Complaint alleging they were immaterial to the case.

## II.

Defendants explain that they moved to strike the paragraphs relating to the unfair trade practices claim rather than moving to dismiss that isolated claim only because Ms. Smith failed to plead separately a claim based on the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461, ("ERISA"). If Ms. Smith had pleaded two separate counts, Defendants state that they would have moved to dismiss the unfair trade practices claim under Rule 12(b)(6). Defendants allege that Ms. Smith's state law claim is completely preempted by ERISA.

■ When deciding preemption issues, federal courts are reluctant to displace state law and, therefore, begin with the presumption that Congress does not intend to preempt state law. *Metro. Life Ins. Co. v. Pettit*, 164 F.3d 857, 861 (4th Cir.1998). Nevertheless, when Congress expresses its intention clearly to supersede state law, the Supremacy Clause establishes that federal law preempts any state law that conflicts either directly, by implication, or by express provision. *Id.* In other words, where the "law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress, federal preemption occurs." *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 99, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993).

■ In any inquiry involving statutory construction, the starting point is the language of the statute itself. ERISA's express purpose is the

[p]rotection of interstate commerce and beneficiaries by requiring disclosure and reporting setting standards of conduct, etc., for fiduciaries. It is hereby declared to be the policy of this Act to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b) (2004). Looking at this text and the entirety of ERISA, the Supreme Court has stated, "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 124 S.Ct. 2488, 2495, 159 L.Ed.2d 312 (2004). For this purpose, ERISA includes expansive preemption provisions, "which are intended to ensure that employee benefit plan regulation [is] exclusively a federal concern." *Id.*

An employee benefit plan is defined as either a welfare benefit plan or a pension

benefit plan. A welfare benefit plan is defined as "any plan, fund or program . . . established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . benefits in the event of sickness, accident, *disability*, death or unemployment . . . ." 29 U.S.C. § 1002(1) (emphasis added).

■ From the statute's text, it is clear that Ms. Smith's disability policies qualify as welfare benefit plans, and are, therefore, employee benefit plans governed under ERISA. In her suit, Ms. Smith is seeking to use North Carolina unfair and deceptive trade practice statutes to hold the defendants accountable for not paying her claims promptly and for forcing her to proceed to litigation to enforce her rights under the disability policies. The relief that she is seeking is afforded under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) which provides that a welfare benefit participant or beneficiary may file a civil action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan."

In *Aetna*, 124 S.Ct. at 2495, the Supreme Court observed:

"[T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. 'The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.' " (cites omitted).

Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted. *See* 481 U.S., at 54–56, 107 S.Ct. 1549, 95 L.Ed.2d 39; see also also *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 143–145, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).

■ As the basis for her state claims, plaintiff cites sections 58–63–15(11) [2] and

2. (11) Unfair Claim Settlement Practices.—Committing or performing with such frequency as to indicate a general business practice of any of the following: *Provided, however, that no violation of this subsection shall of itself create any cause of action in favor of any person other than the Commissioner:*

a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

d. Refusing to pay claims without conducting a reasonable investigation based upon all available information;

e. Failing to affirm or deny coverage of claims within a reasonable time after proof-of-loss statements have been completed;

f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

g. Compelling insured to institute litigation to recover amounts due under an insurance

75–1.1[3] of the General Statutes of North Carolina. While section 58–63–15, by its own terms, limits enforcement to the Commissioner of Insurance, North Carolina courts have allowed other parties to seek recovery under section 75–1.1 for the acts of insurance companies which would be prohibited under section 58–63–15(11). In fact, North Carolina courts do not limit recovery under section 75–1.1 to those acts set out in section 58–63–15(11) but also allow recovery for any other acts which "offend established public policy" such as by being "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *See The Country Club of Johnston County, Inc. v. United States Fidelity & Guar. Co.*, 150 N.C.App. 231, 245–47, 563 S.E.2d 269, 278–79 (2002).

It is clear that Ms. Smith's suit is based entirely on the contention that she has been denied disability benefits under the terms of an insurance policy which, because it was obtained for her benefit by her employer, constitutes an employee benefit plan. Her claim falls under that comprehensive civil enforcement scheme envisioned by ERISA and is remediable under § 502(a). She argues, however, that her claim is not preempted because of the "savings clause" of § 514 that exempts from preemption any state law "which regulates insurance." 29 U.S.C. § 1144(b)(2)(A). The savings clause returns to the states the power to enforce those state laws that regulate insurance, except as provided in the "deemer clause."[4]

policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured;

h.  Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled;

i.  Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured;

j.  Making claims payments to insureds or beneficiaries not accompanied by statement setting forth the coverage under which the payments are being made;

k.  Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

l.  Delaying the investigation or payment of claims by requiring an insured claimant, or the physician, of either, to submit a preliminary claim report and then requiring the subsequent submission of formal proof-of-loss forms, both of which submissions contain substantially the same information;

m.  Failing to promptly settle claims where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage; and

n.  Failing to promptly provide a reasonable explanation of the basis in the insurance poli-

cy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement. (Underlining added).

**3.**  Section 75–1.1 of the General Statutes of North Carolina provides in pertinent part:

(a) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.

(b) For purposes of this section, "commerce" includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession.

(c) Any party claiming to be exempt from the provisions of this section shall have the burden of proof with respect to such claim.

**4.**  Under the deemer clause, an employee benefit plan governed by ERISA shall not be deemed an insurance company, an insurer, or engaged in the business of insurance for purposes of state laws "purporting to regulate" insurance companies. *F.M.C. Corp. v. Holliday*, 498 U.S. 52, 58, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). In other words, the deemer clause operates to exempt self-funded plans from the savings clause and allows claims under such plans to be preempted. However, the deemer clause does not affect this case because High Point Regional Hospital does not fund the insurance policy at issue in this case in any way.

In addressing the application of § 514, Justice Thomas wrote in *Aetna*:

> As this Court has recognized in both *Rush Prudential* and *Pilot Life*, ERISA § 514(b)(2)(A) must be interpreted in light of the congressional intent to create an exclusive federal remedy in ERISA S 502(a). Under ordinary principles of conflict pre-emption, then, even a state law that can arguably be characterized as "regulating insurance" will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme.

124 S.Ct. at 2500. The question here is not whether section 58–63–15(11) is preempted under § 514 of ERISA. While section 58–63–15(11) is directed solely to the insurance industry, it's enforcement is, by its own terms, limited to the Commissioner of Insurance. The question is whether section 75–1.1—the vehicle by which section 58–63–15(11) is made available to persons generally—is preempted and the answer from *Aetna* is that it is. By incorporating those acts specified in section 58–63–15(11), by including any acts considered "unethical" in the insurance industry and by providing trebled damages for violations, section 75–1.1 provides for relief in addition to and outside of that available under § 502 of ERISA and becomes that "separate vehicle" which is completely preempted and not saved under § 514 of ERISA.

### III.

For the reasons set forth above, Defendant's Motion to Strike references in the complaint to sections 58–63–15(11) and 75–1.1 of the General Statutes of North Carolina will be GRANTED. Ms. Smith will be allowed 30 days from this date to amend her Complaint to plead a proper action under § 502 of ERISA to seek the recovery of disability benefits that she alleges were improperly denied by Defendants.

### ORDER

For the reasons set forth in a contemporaneously filed Memorandum Opinion, Defendants' Motion to Strike Immaterial Allegations [Doc. # 4] is GRANTED. Ms. Smith will be allowed 30 days from this date to amend her Complaint to plead a proper action under § 502 of ERISA to seek the recovery of disability benefits that she alleged were improperly denied by Defendants.